## THE LEXINGTON & WEST CAMBRIGDE RAIL ROAD COMPANY vs. WILLIAM CHANDLER.

An act incorporating a rail road company provided that the capital stock should not exceed two thousand shares; that no assessments should be laid on the shares to a greater amount, in the whole, than one hundred dollars; that the number of shares should be determined, from time to time, by the directors; and that as soon as two hundred and fifty shares should be subscribed, the company should proceed to construct and open the road: C. subscribed for five shares, and the directors, after more than two hundred and fifty shares were subscribed, voted to close the subscription books of the capital stock, and passed no other vote fixing the number of shares: C. paid six assessments on his shares, but neglected to pay the seventh, and the treasurer of the company, pursuant to the Rev. Sts. c. 39, § 53, sold said shares at auction, for a sum insufficient to pay said assessment, and the company thereupon brought an action against C. to recover the deficiency. *Held*, that the vote of the directors to close the subscription books for shares, on a given day, was in effect a vote fixing the number of shares at the number then subscribed for, as acertained by said books, and lawfully fixed the number for the time being; that C.'s shares were legally liable to assessment; and that he was answerable for the deficiency sued for.

When a defendant is sued as a stockholder in a rail road corporation for the sum remaining due on an assessment upon his shares, after they are sold for non-payment of the assessment, it is competent and sufficient, for the purpose of showing him to be such stockholder, and liable for the assessment, to give evidence that he signed a subscription paper for shares, before the corporation was organized, that he attended the meeting of the stockholders for the organization of the corporation, and that he wrote and distributed votes, and himself voted, for directors.

A by law of a rail road corporation provided, that in case of a sale of shares for non-payment of assessments, the treasurer should give notice to the delinquent owner, when his residence was known, of the time and place of sale, by letter seasonably put into the mail. *Held*, that this by-law was directory to the

treasurer, and not a condition precedent; and that a written notice of the time and place of sale, signed by the treasurer, and delivered to the owner of the shares or left at his dwelling-house, and received by him as soon as he was entitled to receive it by mail, was sufficient.

SHAW, C. J.   This is an action brought by the rail road company to recover of the defendant the balance due on a seventh assessment of ten dollars, on five shares of the capital stock of the company, subscribed for by him.   The action is founded on the provisions of the Rev. Sts. *c.* 39, § 53, to recover the difference between the amount of the said assessment and the sum at which said five shares were sold; the same having been sold, by order of the directors, as delinquent shares.

The trial was had in the court of common pleas, before the chief justice; and the case comes before us on exceptions to the rulings of the presiding judge.   Upon one of those rulings the defendant obtained a verdict; and to that ruling the plaintiffs alleged exceptions.   But in an earlier stage of the trial, the defendant had alleged exceptions to other rulings of the judge; and all the exceptions are now before us. Those of the plaintiffs, though last in the order of time, will be considered first.

The defendant objected to the right of the company to recover, because the directors had not, by a vote, pursuant to the plaintiffs' act of incorporation, (*St.* 1845, *c.* 186,) fixed the number of shares, of which the capital stock of the company should consist.   The judge ruled that this objection was fatal; and it was upon this ruling that a verdict was found for the defendant.

The provision in § 3 of the act of incorporation is, that "the capital stock of said company shall not exceed two thousand shares, the number of which shall be determined from time to time, by the directors thereof, and no assessments sha.. be laid thereon of a greater amount, in the whole, than one hundred dollars on each share."   It appears by the facts in the case, that the directors caused subscriptions for shares o be opened, and on the 7th of August 1845, more than 250

shares being then subscribed, voted to close the subscription books of the capital stock; and no other vote was passed fixing the number of shares of which the capital should consist.

The ground upon which the defendant's argument rests is this; that until the whole number of shares is determined, no assessment can be laid on any of the shares subscribed for; that, in effect, the subscription is a provisional undertaking only, that the subscriber will pay such sum as his share bears to the whole number of shares; and if that number is not subscribed for, he may be liable for a larger proportion. *Salem Mill Dam Corporation* v. *Ropes*, 6 Pick. 23, and 9 Pick. 187. *Central Turnpike Corp.* v. *Valentine*, 10 Pick. 142. *Proprietors of Newburyport Bridge* v. *Story*, 6 Pick. 45, *note.* But we think the present is not within the principle of those cases. In each of them, the number of shares, of which the capital should consist, was fixed unalterably by the act of incorporation, and the proportionable liability of each share could not be fixed till the whole were taken up. But the act of incorporation of the present plaintiffs is very different. Section 3 provides that the number shall not exceed two thousand, and that the liability of each shareholder shall not exceed one hundred dollars on each share. Section 4 provides that the company shall commence the construction of the road when two hundred and fifty shares are subscribed; and by § 3, the number of shares " shall be determined, *from time to time,* by the directors." Taking these provisions together, they constitute a system entirely different from those cited. The security of the subscriber is in the provision limiting the amount to which he may be assessed. The security for the enterprise is found in the provision authorizing the directors to enlarge and fix the number of shares, so as to furnish the capital required to complete the work, and expressly authorizing and requiring them to proceed when two hundred and fifty shares are subscribed. Of course, each subscriber, when he subscribes, knows that he

will be liable to assessment, when this number is taken, **and,** by subscribing, assents to the terms.

The court are of opinion, that the vote of the directors, to close the books of subscription for shares, on a given day, there being then more than two hundred and fifty subscribed for, was in effect a vote fixing the number of shares at the number then actually subscribed for, as ascertained by the books, and that this lawfully fixed the number for the time being. From the nature of the case, the words " from time to time " authorized an enlargement, but could not authorize a reduction of the number. The number of shares being capable of being ascertained with certainty, the vote referring to them was sufficiently certain.

It may be important, with a view to a new trial, to consider the exceptions taken by the defendant.

1. Evidence was offered, tending to show that the defendant signed a subscription paper for five shares, before the organization of the company ; that he was present at the meeting of the stockholders for the organization of the corporation, wrote and distributed votes, and voted for directors. The defendant objected to the subscription paper as evidence, on the ground that no valid or binding promise could be made to the corporation, before its organization ; and that parol evidence was not sufficient to show that the defendant had made himself a subscriber to the corporation for any shares, or that he became a member of the corporation, by the transactions stated. This objection was overruled, and the subscription paper and acts of the defendant were admitted, as evidence of a ratification of his prior subscription.

We think this decision was correct. The action is not founded on a supposed common law obligation, arising from a promise to take and pay for a number of shares named ; but it is founded on a statute liability, created by the act of incorporation, binding upon all its members. The question is not, whether this subscription was a good promise at common law, made to a proper party, and on a good consideration ; but

whether he was a member of the corporation and a holder of five shares. And for this purpose the evidence was competent. He may be proved to be a member of the corporation, by being a petitioner for the act, or, being within the description of persons incorporated, by acting under it, and assisting to carry it into execution. *Ellis* v. *Marshall*, 2 Mass. 269. The subscription paper, though made before the organization of the corporation, was made after the act of incorporation was passed, and was *prima facie* proof, competent and proper to go to the jury, both to prove the fact of his being a member of the corporation, and of the number of shares held by him, and, in the absence of any countervailing proof, decisive.

2. The other exception of the defendant is, that he was not notified of the intended sale of his shares, for the nonpayment of assessments, by a letter sent to him by mail. This is founded on the sixth article in the by-laws of the corporation, which directs that " in case of sale, the treasurer shall notify the delinquent owner, when his residence is known, of the time and place of sale, by letter seasonably put into the mail ; and his certificate that notice has been duly given shall be full evidence of the fact."

It appears, that a written notice, signed by the treasurer, was delivered to the defendant, or left at his dwelling-house, but that no notice of such sale was sent through the post office. The court decided that the notice given was sufficient, provided the jury were satisfied, that it was in fact received by the defendant, as soon as he was entitled to receive it by mail. We think this was right. The by-law intended to provide an easy, convenient, and, under ordinary circumstances, a certain mode of giving and proving notice; but it was directory to the treasurer, and not a condition precedent. The by-law contains no negative words, and neither expressly, nor by implication, declares no other notice sufficient. The mode indicated by the by-law would be only constructive notice, and was not, we think, intended to take away the effect of actual personal notice.

It is sufficient thus to express an opinion upon the subjec'

of the defendant's exceptions; but the plaintiffs' exceptions being sustained, the verdict is set aside, and a new trial ordered in this court.

*Nelson & G. Farrar*, for the plaintiffs.

*Buttrick*, for the defendant.